UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BEVERLY M. BENNETT,

    Plaintiff,

v.                                Case No. 8:16-cv-278-T-33TBM

BANK OF AMERICA, N.A.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court in consideration of Defendant Bank of America, N.A.'s Motion to Dismiss Complaint for Damages (Doc. # 15), filed on March 21, 2016. Plaintiff Beverly Bennett filed a response in opposition on March 31, 2016. (Doc. # 21). The Motion is ripe for review and, for the reasons stated below, the Court grants in part and denies in part the Motion.

**I.   Background**

This action arises from alleged breach of contract and violations of Regulation X, which implements the provisions of The Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. (RESPA). At all times relevant to this suit, Bennett owned and resided in real property located at 301 Swallow Avenue, Sebring, FL 33870. (Doc. # 1 at ¶ 1). Bank of

1

America is the servicer of a note and mortgage on the property (the loan). (Id. at ¶¶ 3-4).

As a result of surgery in June of 2013, Bennett fell behind on her loan obligations. (Id. at ¶¶ 17-18). Bennett subsequently applied for a loan modification. (Id. at ¶ 18). On August 6, 2013, Bank of America informed Bennett she had been approved for a trial period plan. (Id. at ¶ 19). Pursuant to the trial period plan, Bennett was required to make monthly payments of $449.95 for three months, with the last payment due on November 1, 2013. (Id. at ¶ 20). Bennett remitted all three payments. (Id. at ¶¶ 21-24).

Upon satisfaction of the trial period plan, Bank of America was to send documents for a permanent loan modification; however, Bennett did not receive those documents. (Id. at ¶¶ 25-26). As such, Bennett called Bank of America on November 19, 2013; she was informed to await the documents and her December 1, 2013, payment would be $448.02. (Id. at ¶¶ 27-29). Bennett was further informed to continue to make all required payments, which she did. (Id. at ¶¶ 29-30).

As of January 1, 2014, Bennett still had not received the documents for the permanent loan modification. (Id. at ¶ 31). Accordingly, Bennett called Bank of America the next day

2

to inquire as to when the documents would be delivered. (Id. at ¶ 32). While waiting for the documents, Bennett continued to make monthly payments. (Id. at ¶ 34). A Bank of America representative delivered a copy of the documents to Bennett on January 25, 2014. (Id. at ¶ 35). Bennett executed the loan modification and had her signature notarized on January 27, 2014. (Id. at ¶ 37).

Unsure of where to mail the documents, Bennett called Bank of America over the next 2 days to obtain the proper address to which she should mail the executed documents. (Id. at ¶ 38). On the second day, January 29, 2014, Bennett went to her local Bank of America branch, provided a representative her executed documents, and was informed the executed documents would be forwarded to Bank of America's main office. (Id. at ¶ 39).

Bennett submitted her monthly payment for February of 2014, on the first of that month. (Id. at ¶ 40). Also on February 1, 2014, Bank of America notified Bennett that her "loan [wa]s not eligible for a modification because after being offered a Trial Period Plan or modification, you notified us that you did not wish to accept the offer." (Id. at ¶¶ 41-42). However, Bennett "never informed [Bank of

America] that she did not wish to accept the Modification." (Id. at ¶ 43).

Even after receiving the denial, Bennett continued to make monthly payments. Specifically, Bennett made payments in satisfaction of her March 1, 2014, April 1, 2014, and May 1, 2014, obligations. (Id. at ¶¶ 44-48). But, Bank of America returned the funds Bennett paid in satisfaction of her May 1, 2014, obligation. (Id. at ¶ 49). Bank of America then instituted a foreclosure action on May 15, 2014, against Bennett in the Tenth Judicial Circuit in and for Highlands County, Florida. (Id. at ¶ 50). That foreclosure proceeding was styled as Bank of America, N.A. v. Beverly M. Bennett, et al., and was assigned case number 28-2014-CA-000275. (Id.).

After being served in the foreclosure action, Bennett called Bank of America on June 12, 2014, to discuss the foreclosure. (Id. at ¶ 51). A Bank of America representative informed Bennett a copy of the executed permanent loan modification was found and would be escalated to a manager for review. (Id. at ¶ 52). Because nothing came of the June 12, 2014, escalation, Bennett submitted a loss mitigation application in July of 2014. (Id. at ¶¶ 53-54). On July 28, 2014, Bennett called Bank of America to ensure receipt of her application. (Id. at ¶ 55). A Bank of America representative

4

advised Bennett on July 29, 2014, she had submitted all requested documentation and Bank of America would move forward with reviewing her application. (Id. at ¶¶ 56-57).

Thereafter, Bank of America began to request additional and clarifying information and documentation. (Id. at ¶ 58). Bennett replied quickly and to the best of her ability. (Id. at ¶ 59). Bank of America sent several notices confirming receipt of additional documentation submitted by Bennett. (Id. at ¶¶ 61-62). Bank of America did not send a notice of denial at any time between July 29, 2014, and November 6, 2014; however, on November 6, 2014, Bank of America filed a motion for summary judgment in the foreclosure action. (Id. at ¶¶ 63-64). The hearing on the motion for summary judgment was scheduled for February 24, 2015. (Id. at ¶ 71).

Notwithstanding the filing of the motion for summary judgment in the foreclosure action, Bennett continued to comply with all requests from Bank of America. (Id. at ¶ 65). On January 6 and 7, 2015, Bank of America informed Bennett the only further information required was an executed copy of IRS Form 4506-T. (Id. at ¶¶ 66-67). Bennett was instructed to submit the IRS Form 4506-T by February 6, 2015. (Id. at ¶ 68). Bennett submitted the requested IRS Form 4506-T on January 7, 2015. (Id. at ¶ 69).

5

Bennett called Bank of America on February 12, 2015, to inquire as to the status of her loss mitigation application. (Id. at ¶ 72). Bank of America informed Bennett no decision had been reached, and no additional information was requested at that time. (Id. at ¶¶ 73-74). Two days later, Bank of America notified Bennett her loss mitigation application was "'incomplete' or that [Bank of America] needed 'additional information not previously requested.'" (Id. at ¶ 75) (citation omitted). Bank of America advised Bennett on February 19, 2015, that her application could not be completed until she submitted two months' proof of receipt of food stamps and a new Form 710 Uniform Borrower Assistance Form. (Id. at ¶ 77). Bennett clarified her food stamp benefits do not show on her bank account statements and she had submitted a letter of explanation regarding the same. (Id. at ¶ 78).

Bank of America proceeded with its motion for summary judgment in the foreclosure action and obtained a foreclosure judgment on February 24, 2015. (Id. at ¶ 80). Bank of America did not attempt to postpone the February 24, 2015, hearing or otherwise avoid a ruling on the motion. (Id. at ¶ 81).

On April 27, 2015, Bennett sent a Notice of Error under 12 C.F.R. § 1024.35 to Bank of America. (Id. at ¶ 83). The Notice of Error alleged Bank of America violated 12 C.F.R. §

6

1024.41(g) by dual-tracking Bennett's loan. (Id. at ¶ 84). The Notice of Error also alleged Bank of America erred by "unilaterally repudiating" the permanent loan modification. (Id.). Bank of America received the Notice of Error on April 30, 2015. (Id. at ¶ 87). After informing Bennett it needed additional time to respond, Bank of America replied on June 30, 2015. (Id. at ¶ 89). Bennett alleges Bank of America's response did not address the errors alleged. (Id. at ¶ 90).

Bennett was subsequently approved for a trial period plan on a new loan modification on September 2, 2015. (Id. at ¶ 91). Bennett complied with the trial period plan and was approved for a permanent modification on December 9, 2015. (Id. at ¶¶ 92-94). But, the terms of the new permanent loan modification "are less favorable than the terms" of the first. (Id. at ¶ 95).

Thereafter, Bennett filed the instant suit on February 4, 2016. (Id.). The Complaint alleges breach of contract (Count I), violation of 12 C.F.R. § 1024.41(g) (Count II), violation of 12 C.F.R. § 1024.41(c) (Count III), violation of 12 C.F.R. § 1024.41(b) (Count IV), and violation of 12 C.F.R. § 1024.35(e) (Count V). (Id. at 19, 24, 29, 34, 38). Bank of America filed the pending Motion to Dismiss (Doc. # 15), which is ripe for adjudication.

**II.   Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) (stating "[o]n a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true"). However:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

Furthermore, "[t]he scope of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002). A "court may

consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (internal citation omitted).

## III. Analysis

### A. Count I: Breach of Contract

"In order to properly plead a claim for breach of contract under Florida law, a plaintiff must prove the existence of a valid contract, a breach of such contract, and damages resulting from such breach." Senter v. JPMorgan Chase Bank, N.A., 810 F. Supp. 2d 1339, 1345 (S.D. Fla. 2011) (citing Knowles v. C.I.T. Corp., 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977)).

Bank of America argues Bennett fails to state a breach of contract claim as a matter of law by alleging she had her local Bank of America branch forward the initial loan modification documents to Bank of America's main office rather than mailing the documents to a specific address. Although the Complaint alleges Bennett had her local Bank of America branch forward the permanent loan modification

9

documents to Bank of America's main office, the Complaint further alleges she did so after seeking confirmation that the local branch could do so. (Doc. # 1 at ¶¶ 38-39). Furthermore, the Complaint alleges that Bank of America actually received the executed permanent loan modification documents. (Id. at ¶ 52). At this preliminary stage, the Court determines Bennett has adequately alleged a cause of action.

    **B.**    **Counts II – IV: The Application**

        **1.**    **Regulation X Applies**

Regulation X became effective on January 10, 2014. Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696-01, 10696 (Feb. 14, 2013). Regulation X prescribes what a servicer must do on receipt of a loss mitigation application. 12 C.F.R. § 1024.41(b)-(j). A servicer "is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account." 12 C.F.R. § 1024.41(i).

Bank of America argues Bennett fails to state a cause of action because Bank of America previously considered Bennett for a loan modification in 2013. (Doc. # 15 at 10-11). While the Complaint alleges Bennett applied for a loan modification in 2013, Regulation X's requirements had not yet become

effective. As such, Bank of America "was still required to comply with the requirements of section 1024.41 at least once after the section became effective." Bennett v. Bank of Am., N.A., 126 F. Supp. 3d 871, 884 (E.D. Ky. 2015); see also Billings v. Seterus, Inc., No. 1:14-cv-1295, 2016 WL 1055753, at *3 (W.D. Mich. Mar. 17, 2016) (same); Lage v. Ocwen Loan Servicing LLC, No. 14-cv-81522-BLOOM/VALLE, 2015 WL 7294854, at *9 (S.D. Fla. Nov. 19, 2015) (stating, "it is evident that an application received by a servicer prior to the Effective Date does not activate the requirements under Regulation X"). Accordingly, Regulation X is applicable.

### 2. Count II: Section 12 C.F.R. § 1024.41(g)

Count II alleges Bank of America violated 12 C.F.R. § 1024.41(g), which states:

> [i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any . . . foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale . . . .

12 C.F.R. § 1024.41(g). However, a servicer may move for a foreclosure judgment notwithstanding a borrower's submission of a complete loss mitigation application if one of three exceptions applies. Id. at § 1024.41(g)(1)-(3). Furthermore, while Regulation X defines two types of loss mitigation

11

applications, 12 C.F.R. §§ 1024.41(b)(1), (c)(2)(iv) (defining complete and facially complete loss mitigation applications), a facially complete loss mitigation application is treated as a complete loss mitigation application for purposes of 12 C.F.R. § 1024.41(g). Id. at § 1024.41(c)(2)(iv). And, "[i]f the borrower completes the application within this period, the application shall be considered complete as of the date it was facially complete, for the purposes of paragraph[] . . . (g) . . . ." Id.

Here, Bennett alleges Bank of America instituted a foreclosure action on May 15, 2014, and she submitted a loss mitigation application in July of 2014. (Doc. # 1 at ¶¶ 50, 54, 56). Although Bank of America requested additional information, it never notified Bennett her loss mitigation application had been denied. (Id. at ¶¶ 59-62, 64). Bank of America filed a motion for summary judgment and the hearing thereon was scheduled for February 24, 2015. (Id. at ¶¶ 63, 80). On January 7, 2015, Bank of America notified Bennett the only remaining information required was an executed copy of IRS Form 4506-T, which Bennett submitted that same day. (Id. at ¶¶ 67-69). Bank of America proceeded with its motion for summary judgment and obtained a judgment of foreclosure. (Id. at ¶ 80). Remembering that a facially complete application is

12

treated as a complete application for purposes of 12 C.F.R. § 1024.41(g), 12 C.F.R. § 1024.41(c)(2)(iv), and accepting the well-pled allegations as true, Bennett has stated a cause of action under 12 C.F.R. § 1024.41(g).

### 3. Count III: 12 C.F.R. § 1024.41(c)

Count III alleges Bank of America violated 12 C.F.R. § 1024.41(c). Under this Section, "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall" evaluate the loss mitigation application for all options available to the borrower. 12 C.F.R. §§ 1024.41(c)(1)-(c)(1)(i). The servicer must also "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower . . . ." Id. at § 1024.41(c)(1)(ii).

Furthermore, "[i]f the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents . . . ." Id. at § 1024.41(c)(2)(iv). "If the borrower completes the application within this period,

13

the application shall be considered complete . . . as of the date the application was actually complete for the purposes of paragraph (c)." Id.

Here, on January 7, 2015, Bank of America notified Bennett the only remaining information required was an executed copy of IRS Form 4506-T. (Id. at ¶ 67). Bennett submitted the form on January 7, 2015. (Id. at ¶ 69). Thus, under 12 C.F.R. § 1024.41(c)(2)(iv), Bennett had submitted a complete loss mitigation application. However, Bank of America did not send a written notice to Bennett detailing their determination of eligibility within the timeframe established by 12 C.F.R. § 1024.41(c)(1). (Doc. # 1 at ¶¶ 188-89). Rather, 8 days after the deadline set forth in 12 C.F.R. § 1024.41(c)(1) lapsed, Bank of America requested additional information. (Doc. # 1 at ¶ 75). Accepting these well-pled allegations as true, Bennett has stated a cause of action under 12 C.F.R. § 1024.41(c).

### 4.   Count IV: 12 C.F.R. § 1024.41(b)

Count IV alleges Bank of America violated 12 C.F.R. § 1024.41(b), which prescribes what a servicer must do when it receives a loss mitigation application 45 days or more before a foreclosure sale. 12 C.F.R. § 1024.41(b)(2)(i). In such circumstances, a servicer shall promptly review a loss

14

mitigation application and determine whether it is complete. Id. at § 1024.41(b)(2)(i)(A). A servicer must also notify the borrower in writing within 5 days of receiving the loss mitigation application to acknowledge receipt thereof and state the servicer's determination regarding completeness. Id. at § 1024.41(b)(2)(i)(B). If a loss mitigation application is incomplete, a "servicer shall exercise reasonable diligence in obtaining documents and information to complete" it. Id. at § 1024.41(b)(1). Furthermore,

> [t]o the extent a determination of whether protections under this section apply to a borrower is made on the basis of the number of days between when a complete loss mitigation application is received and when a foreclosure sale occurs, such determination shall be made as of the date a complete loss mitigation application is received.

Id. at § 1024.41(b)(3).

Count IV alleges Bank of America violated 12 C.F.R. § 1024.41(b) by failing to exercise reasonable diligence in obtaining documents and information to complete Bennett's loss mitigation application, because Bank of America did not request additional information until after the deadline for reviewing the loss mitigation application lapsed. (Doc. # 1 at 34-37). As stated above, Bennett sufficiently alleged Bank of America was in receipt of a complete loss mitigation application as of January 7, 2015. As such, under 12 C.F.R.

15

§ 1204.41(c), Bank of America was required to evaluate Bennett's loss mitigation application within 30 days and inform Bennett of its determination as to which options, if any, would be offered. If in the course of its evaluation, Bank of America discovered additional documents and information were required, it would have been required to promptly request such. 12 C.F.R. §§ 1024.41(b)(2)(i)(B), (c)(2)(iv).

Rather than doing so, Bank of America allegedly waited until after the deadline set forth by 12 C.F.R. § 1024.41(c) lapsed to request additional information. Accordingly, accepting the well-pled allegations as true, Bennett has stated a cause of action under 12 C.F.R. § 1024.41(b).

### C.  Count V: The Notice of Error

Count V alleges Bank of America violated 12 C.F.R. § 1024.35(e). Section 1024.35 sets forth certain requirements for a servicer that receives any written notice from a borrower asserting an error. 12 C.F.R. § 1024.35(a)-(i). Relevant to this action, 12 C.F.R. § 1024.35(e)(1)(i)(B) requires a servicer to respond to a notice of error by conducting an investigation and providing the borrower with a written notification that includes a statement that the

16

servicer has determined that no error occurred and the reasons therefor.

Included in the Complaint is Bank of America's response to Bennett's Notice of Error. (Doc. # 1 at 105-06). Although Bennett alleges Bank of America did not respond to her Notice of Error in a substantive manner, the response included in the Complaint demonstrates otherwise. To be sure, the response indicates that Bank of America conducted an investigation, responded to the claims of error, and provided reasons for its determinations. (Id.). And, when attachments to a complaint conflict with the complaint's allegations, the attachments control. Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009) (citing Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812, 813 (5th Cir. 1940) (stating, "[w]here there is conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control")). Accordingly, Count V fails to state a cause of action and is dismissed.

### D. Damages

RESPA provides that a servicer may be liable for actual damages, statutory damages not to exceed $2,000, and costs and attorney's fees. 12 U.S.C. § 2605(f)(1), (3). Actual damages under RESPA include both pecuniary and non-pecuniary

17

damages, e.g., emotional distress. McLean v. GMAC Mortg. Corp., 595 F. Supp. 2d 1360, 1366 (S.D. Fla. 2009).

To recover statutory damages, a plaintiff must show "a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(B). "[C]ourts have interpreted the term 'pattern or practice' in accordance with the usual meaning of the words." McLean, 595 F. Supp. 2d at 1365 (citation omitted). Further, "[t]he term suggests a standard or routine way of operating." Id. (citations omitted) (holding two violations insufficient and noting five violations sufficient).

Although Bank of America argues Bennett failed to adequately plead damages, a review of the Complaint establishes that Bennett sufficiently alleged damages. (Doc. # 1 at ¶¶ 96-106). For example, Bennett alleges that due to Bank of America's putative violations of Regulation X she will be forced to pay more under her loan modification than if the violations had not occurred. In addition, Bennett alleges Bank of America's alleged violations of Regulation X caused her emotional distress. Furthermore, Bennett alleges 4 violations of Regulation X. At this preliminary stage, the Court finds the Complaint's allegations sufficient.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Bank of America, N.A.'s Motion to Dismiss Complaint for Damages (Doc. # 15) is **DENIED** as to Counts I-IV, but Count V is **DISMISSED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 6th day of May, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE